United States District Court
District of Massachusetts

|   |   |   |
|---|---|---|
| **FIREMAN'S FUND INSURANCE COMPANY,** | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | 12-10509-NMG |
| **BRADFORD-WHITE CORPORATION,** | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM & ORDER

**GORTON, J.**

Plaintiff Fireman's Fund Insurance Company ("plaintiff" or "Fireman's") brings this products liability and breach of warranty subrogation action against defendant Bradford-White Corporation ("defendant" or "Bradford-White"). Plaintiff alleges that a design defect in the cold-water connection of a Bradford-White water heater caused a leak that severely damaged the property of plaintiff's insured, Bell Partners, Inc. ("Bell Partners"). The water heater was removed from the building by employees of the insured before defendant or defendant's counsel had an opportunity to inspect it or conduct any testing to determine the cause of the leak.

Defendant now moves for summary judgment on the grounds that plaintiff cannot prove its claims without examining and testing the water heater. In the alternative, defendant

-1-

contends that it is substantially prejudiced by the spoliation of the subject heater and moves the Court to sanction plaintiff by either dismissing the case or precluding plaintiff from introducing certain arguments and evidence.

I. **Background**

In February, 2010, a Bradford-White water heater leaked and caused property damage to plaintiff's insured. Fireman's alleges that a design defect in the connection between the water heater and the copper pipe to which it was attached caused the pipe to separate from a steel nipple.

The subject water heater was located in an interior closet of an apartment that is a part of an apartment complex in Marlborough, Massachusetts. The heater was not serviced at any point between December, 2007 and February, 2010. All water heaters in the apartments were inspected biannually by two members of the maintenance staff at the apartment complex but there is no evidence that any member of that staff reviewed the Bradford-White user manual. In conducting those inspections, the maintenance workers looked for active leaks but took no action if they saw rust or corrosion on a water heater.

After the leak was discovered, an employee of Fireman's requested that Bell Partners retain the subject water heater. Neither plaintiff nor Bell Partners marked the heater so it could be identified in the future. Ultimately, Bell Partners

disposed of the water heater at some point between April and November, 2010 without contacting Fireman's or its counsel and before defendant or its counsel could inspect it.

Before the heater disappeared, William Goode ("Goode"), an engineer retained by plaintiff, visited the apartment complex to inspect the subject water heater. Goode took multiple photographs of the water heater and its connections. He also selected two "exemplar" water heaters from other units in the building that he believed showed similar evidence of corrosion. Defendant asserts that the exemplar heaters were 1) different models than the subject water heater, 2) manufactured almost a year earlier than the subject water heater and 3) located in "outside closets" on the decks of the units rather than in an "interior closet" such as the subject water heater. Plaintiff confirms that the exemplars were manufactured in different years than the subject water heater and were kept in outside closets but asserts that all three heaters had the same fittings and connections.

In May, 2010, Fireman's notified defendant of a potential claim arising out of the leak and invited it to examine the subject water heater. Defense counsel subsequently contacted plaintiff's attorney at least seven times by email and letter to schedule a date and time for the inspection. Plaintiff's

counsel did not respond to several of those communications and on other occasions postponed scheduled inspections indefinitely.

Finally, in October, 2010, plaintiff's attorney provided defense counsel with the date on which the inspection would take place and informed him that the subject water heater was in storage at the apartment complex. On November 3, 2010, plaintiff's attorney confirmed by email that the inspection would take place the following week and that the heater had been retained. On the day of the scheduled inspection, however, counsel for defendant discovered that the water heater had been removed by Bell Partners and that its whereabouts were unknown.

After defense counsel realized that the heater was missing, he requested that plaintiff arrange for photographs to be taken of the water connections of any water heater removed from the apartment complex going forward. Defendant has been provided with photographs of the exemplar heaters but of no other heaters or connections. Fireman's asserts that heaters other than the exemplar heaters were removed because of "maintenance issues" and are not relevant to this litigation.

Susan Freeman ("Freeman"), a metallurgic expert retained by Fireman's, conducted tests on the exemplar heaters. One of the two exemplar heaters was destructively tested in November, 2012 over defendant's objections. Based upon those tests, Freeman concluded that the leak in the subject heater was caused by a

design defect in the dialectric coupling mechanism that connects the heater to a copper pipe. Specifically, she concluded that the nipple connections of the subject water heater failed due to galvanic corrosion of the steel threads of the steel nipple. Galvanic corrosion results when two dissimilar metals (in this case, copper and steel) come into contact and are exposed to an electrolyte such as water. Freeman suggests that a different dialectric coupling design could have fully isolated the copper and steel components and thus avoided the coupling that, in her opinion, led to the gavlvanic corrosion.

Defendant contests Freeman's design defect theory. Mark Taylor, Bradford-White's senior vice president for corporate administration who is trained as an engineer and is familiar with the subject water heater model, avers that the leak may have been caused by something other than the alleged defect and that it is impossible to determine what caused the leak to occur without examining and testing the subject water heater.

## II. **Defendant's Motion for Sanctions**

Defendant moves the Court to sanction plaintiff under the doctrine of spoliation for failing to retain the subject water heater for testing and examination. It suggests that dismissal of the action is necessary and appropriate under the circumstances but, at the very least, the Court should preclude plaintiff from arguing at trial that any evidence or test

results obtained from the "exemplar" water heaters is relevant to the condition of the subject water heater.

**A. Legal Standard**

Spoliation is the intentional, negligent or malicious destruction of relevant evidence. If the court determines that such evidence has been destroyed, it may decide what sanction, if any, to impose upon the offending party. Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 446 (1st Cir. 1997). Although this Court's jurisdiction over the instant suit is based upon diversity, federal law governs its inquiry under the spoliation doctrine. Townsend v. Am. Insulated Panel Co., 174 F.R.D. 1, 4 (D. Mass. 1997).

Factors to be considered in determining the appropriate sanction for the spoliation of evidence include:

> (1) whether the adverse party was prejudiced by the destruction of evidence; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the destruction was in good or bad faith; and (5) the potential for abuse if the evidence is not excluded or the party is not otherwise sanctioned.

McGuire v. Acufex Microsurgical, Inc., 175 F.R.D. 149, 156 (D. Mass. 1997) (citing Headley v. Chrysler Motor Corp., 141 F.R.D. 362, 365 (D. Mass. 1991)).

The First Circuit has explained that the "prejudice to the non-offending party" and the "degree of fault of the offending

party" are of particular importance to the inquiry. Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 29 (1st Cir. 1998). Moreover, the court has explained that a non-offending party is more likely to be prejudiced when the offending party claims that a product was defectively manufactured instead of defectively designed:

> Clearly, if a product was manufactured defectively, its defect is likely to be particular to the individual product. Consequently, a party's examination of that product may be critical to ascertaining, among other things, the presence of the defect. In design defect cases, however, a party's examination of the individual product at issue may be of lesser importance as the design defect alleged can be seen in other samples of the product.

Id. at 29. Nevertheless, the ability to examine the subject product may be crucial in design defect cases where "the question of whether the alleged defect or some other factor caused a particular injury is at issue." Id.

Potential sanctions for spoliation include dismissing the case, excluding evidence and instructing the jury on the "spoliation inference," i.e. that it may infer from the fact that the evidence was lost or destroyed while within a party's control that it would have been damaging to that party's position. See Booker v. Mass. Dep't of Pub. Health, 612 F.3d 34, 45-46 (1st Cir. 2010) (spoliation inference); Townsend, 174 F.R.D. at 4 (citing Vazquez-Corales v. Sea-Land Serv., Inc., 172 F.R.D. 10, 13 (D.P.R. 1997)) (possible sanctions). The First

-7-

Circuit generally prefers cases to be resolved on the merits and therefore disfavors dismissal. Collazo-Santiago, 149 F.3d at 28.

**B.  Application**

The parties do not dispute that plaintiff was obligated to retain the heater as evidence.  As a result, the Court must decide whether it is appropriate to sanction plaintiff for the spoliation of the water heater by Bell Partners.

Defendant does not seriously contend, and the Court does not find, that plaintiff acted in bad faith.  Plaintiff asked Bell Partners to retain the heater and Bell Partners did not contact plaintiff or its counsel before removing it.  While plaintiff could have taken additional steps to ensure that the heater was retained such as marking the heater, arranging for the heater to be stored elsewhere or contacting Bell Partners between April, 2010 and November, 2010 to remind it not to remove the heater, its omissions were at most negligent.  Thus, the appropriate sanction largely depends upon the degree to which defendant is prejudiced by the loss of the heater.

Defendant claims that it is substantially prejudiced because 1) it cannot test plaintiff's theory that the design defect caused the leak and 2) the exemplar heaters are dissimilar to the subject water heater.  The Court will consider those arguments seriatim.

**1. Causation**

Defendant claims that the loss of the heater prevents it from testing the viability of plaintiff's design defect theory because it cannot determine if the leak was caused by the alleged defect or something else. See Collazo-Santiago, 149 F.3d at 29 (explaining that the loss of the subject product is more likely to be prejudicial when causation is at issue in a design defect case).

First, defendant asserts that causation is at issue because the allegedly defective feature does not always cause an accelerated rate of galvanic corrosion. According to defendant, the photographs taken by Goode show that the copper pipe to steel nipple connection on the hot water side of the subject water heater displayed only minor galvanic corrosion that was consistent with corrosion typically found in a heater of that age whereas the cold water connector was substantially more corroded. Fireman's responds that any difference in corrosion levels between the hot and cold sides is a red herring because its proposed alternative design would prevent <u>any</u> galvanic corrosion by isolating the copper and steel components.

Defendant also suggests that something other than a design defect caused the leak. Mark Taylor, defendant's representative, testified that the corrosion could have been caused by 1) a leak at the connection between the copper pipe

and the nipple in the cold water inlet on the water heater, 2) improper venting or 3) airborne contaminants. Defendant also contends that it cannot be determined, without conducting a physical examination, testing trace elements and taking microphotographs, that the corrosion and resulting leak were caused by one of those external sources of electrolytes.

Plaintiff responds that defendant's external contaminant and moisture theory is scientifically impossible because external sources of moisture cannot corrode the internal steel threads at the connector and the photographs taken by Goode show that the internal threads were corroded. Fireman's also asserts that the source of the electrolyte is irrelevant to the issue at hand, which is whether defendant could have designed its dialectric waterway to avoid any contact between the metals and thus any galvanic corrosion.

### 2. Similarity to Exemplars

Bradford-White also maintains that the availability of the exemplar heaters selected by Goode does not mitigate its prejudice. Taylor avers that there are significant differences between the subject water heaters and the exemplars such as different "break points" at the copper pipe-to-nipple connections and different levels of corrosion on the heaters and the attached copper piping. Fireman's rejoins that the different levels of corrosion and allegedly different "break

points" are consistent with the fact that the exemplars were manufactured (and presumably in use) before the subject water heater and does not demonstrate that the corrosion was due to a different cause such that any comparison is inapposite.

   **3. Analysis**

While the issue presents a close call because defendant is likely to suffer some prejudice, the Court will not dismiss the case or preclude plaintiff from presenting evidence or argument with respect to the exemplar heaters. The importance of testing to determine the source of the electrolyte that reacted with the two metals appears to be overblown. Moreover, defendant may rely upon the photographs taken by Goode in support of its theory that the different sides of the heater demonstrated different levels of corrosion. See Chapman v. Bernards, Inc., 167 F. Supp. 2d 406, 413 (D. Mass. 2001).

With respect to the exemplar heaters, defendant is free to argue that the age and storage location of the exemplars or the nature of the corrosion makes any comparison to the subject heater inapposite but it has not presented sufficient evidence at this stage to warrant excluding reference to the exemplars altogether.

Should this case proceed to trial, the Court will, however, instruct the jury that it may draw the spoliation inference against plaintiff and the defendant may argue it. The Court

-11-

finds that such a sanction is appropriate where plaintiff could have done more to prevent the removal of the subject water heater and appears to have unduly delayed scheduling a date on which defendant could examine it.

III. **Defendant's Motion for Summary Judgment**

Defendant also moves for summary judgment on all three counts. For the reasons that follow, that motion will be allowed with respect to Count II but otherwise denied.

    **A.    Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the

material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B. Application**

    **1. Design Defect (Count I)**

Fireman's products liability claim is styled as a negligent design claim. A plaintiff claiming negligent design must establish the basic elements of duty, breach of duty, cause in fact, and proximate cause. Colter v. Barber-Greene Co., 525 N.E.2d 1305, 1313 (Mass. 1988). To establish breach, the plaintiff must prove that the defendant 1) failed to exercise reasonable care to eliminate avoidable dangers to the user and 2) there is an alternative design available which would allow

the product to perform the same function in a safer fashion. Uloth v. City Tank Corp., 384 N.E.2d 1188, 1191 (Mass. 1978).

Defendant argues that plaintiff cannot prove that the alleged design defect caused the leak regardless of whether the Court issues sanctions. For the reasons described above, the Court disagrees. Fireman's theory is that contact between the copper and steel components of the connection between the heater and the attached copper pipe led to galvanic corrosion and therefore it is irrelevant whether the electrolyte came from an external or internal source. Bradford-White presents no alternative theory of causation. Furthermore, plaintiff has presented an adequate explanation of the similarities and differences between the subject heater and the exemplar to survive summary judgment.

The Court also rejects the argument that plaintiff cannot recover on this claim because Bell Partners was contributorily negligent under M.G.L. c. 231, § 85. In all but rare cases, the issue of contributory negligence is for the jury to decide, see Mirick v. Galligan, 360 N.E.2d 1045, 1048 (Mass. 1977) (citations omitted), and the Court is not persuaded that this case presents one of those rare instances in which it would be justified in taking that question away from the jury.

### 2. Breach of Warranty in Tort (Count II)

The Court agrees that with defendant, however, that Count II, which alleges strict liability for "breach of warranty in tort", fails to state a claim as a matter of law. Massachusetts does not recognize a strict liability cause of action for a defective product. Commonwealth v. Johnson Insulation, 682 N.E.2d 1323, 1326 (Mass. 1997). Plaintiff does not allege that defendant made any express warranties with respect to the subject water heater and therefore Count II cannot survive as an express warranty claim. Alternatively, to the extent that Count II alleges breach of the implied warranty of merchantability, it will be dismissed as duplicative of Count III.

### 3. Breach of Implied Warranty of Merchantability (Count III)

Under Massachusetts law, manufacturers impliedly warrant that their products will be "fit for the ordinary purposes for which such goods are used." Backe v. Wickes Corp., 378 N.E.2d 964, 969 (Mass. 1978) (quoting Mass. Gen. Laws ch. 106, § 2-314(2)(C)). To succeed on its breach of the implied warranty of merchantability claim, plaintiff must show that 1) defendant manufactured or sold the product that injured plaintiff, 2) a defect or unreasonably dangerous condition existed so that it was not suitable for the ordinary uses for which goods of that kind were sold, 3) plaintiff was using the product in a manner

that defendant intended or that could reasonably have been foreseen and 4) the defect or unreasonably defective condition was a legal cause of plaintiff's injury. Lally v. Volkswagen Aktiengesellschaft, 698 N.E.2d 28, 43 (Mass. App. Ct. 1998).

Defendant contends that plaintiff cannot prove causation and therefore Count III fails as a matter of law.  That argument is unavailing for the reasons provided with respect to Count I.

### ORDER

In accordance with the foregoing, defendant's motion for summary judgment (Docket No. 30) is, with respect to Count II, **ALLOWED,** but is otherwise **DENIED**.  Defendant's concurrent motion to dismiss or exclude evidence as sanctions for spoliation (Docket No. 30) is **DENIED** but the Court will instruct the jury on the spoliation inference should the case proceed to trial.
**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated April 15, 2014